COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Frank and Senior Judge Bray
Argued by teleconference


COLEMAN EUGENE BENTON
                                              OPINION BY
v.    Record No. 0105-02-1        JUDGE ROSEMARIE ANNUNZIATA
                                           MARCH 25, 2003
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                  A. Joseph Canada, Jr., Judge

            William P. Robinson, Jr. (Robinson, Neeley &
            Anderson, on brief), for appellant.

            Stephen R. McCullough, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     Coleman Benton appeals his conviction of possession of a

firearm by a convicted felon, in violation of Code § 18.2-308.2.

Benton contends the court erred in denying his motion to

suppress his statements to a police officer, which Benton argues

were made in violation of his Fifth Amendment rights under the

federal and Virginia Constitutions.  Benton bases his appeal on

the contention that the trial court erroneously invoked the

"public safety exception" to the Miranda requirements.  He also

contends that the police had no grounds to arrest him under Code

§ 19.2-81 and that his arrest and detention were therefore

unlawful.  Finding no error in the trial court's decision, we

affirm.

FACTS

On appeal, we review the evidence in the light most favorable to the party prevailing below, together with all reasonable inferences that may be drawn. Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475 (1997). So viewed, the evidence establishes that on September 28, 2000, Officer Kevin Sullivan of the Virginia Beach police responded to a "nonemergency" report of a domestic disturbance at Benton's home address. When the officers were advised via another radio dispatch that the situation was "turning physical and was continuing to escalate and get out of control," they changed their response to "emergency mode." The officers were subsequently informed by the dispatcher that a gun had been discharged inside the residence. Two children, aged nine and four, were in an adjacent room during Benton's dispute with his wife.

Based on a description Officer Sullivan received from the dispatcher, he stopped Benton's car. Benton was handcuffed and placed on the ground, frisked for weapons and, after a search of the vehicle disclosed no weapons, placed in a patrol car. Before advising Benton of his Miranda rights, Officer Sullivan asked Benton if he had just come from his residence and he replied, "Yes." He also acknowledged that "he was part of the situation that was going on there." Sullivan asked Benton if he had been arrested before and whether he was on probation or

parole.  Benton told the police he had been arrested before.  He denied he was armed with a handgun, stating, "there's no way [he] would have a handgun with [him] or on [him] because . . . [he] had been convicted of a prior felony."  He agreed to accompany the police back to the residence where the domestic violence had occurred.

Once the officers and Benton arrived at Benton's residence, Sullivan entered the residence to speak with Benton's wife.  When he returned to the police car, Sullivan asked "if he knew where the gun was at."  Benton responded he had taken the gun outside the residence and "thrown it" and "it could be in the bushes."  A search of the bushes did not yield the gun.  Sullivan then read Benton his Miranda rights and, after verifying that Benton understood his rights, proceeded to question him further.  Benton admitted that he brought a gun into his wife's house and that he later threw it down a storm drain.  Police never found the gun.

## Analysis

When reviewing a trial court's denial of a motion to suppress:

> [T]he burden is on the appellant to show that the trial court's decision constituted reversible error.  [This Court views] the evidence in the light most favorable to the prevailing party granting to it all reasonable inferences deducible therefrom.  [This Court will] review the trial court's findings of historical fact only for "clear error," but [this Court reviews] de novo the

> trial court's application of defined legal
> standards to the particular facts of a case,
> such as determinations of reasonable
> suspicion and probable cause.

Quinn, 25 Va. App. at 712-13, 492 S.E.2d at 475-76 (internal citations omitted).

"[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized" and the individual must, prior to questioning, be given certain warnings. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). The failure to give Miranda warnings prior to custodial interrogation violates that individual's constitutional rights under the Fifth Amendment and requires suppression of any illegally obtained statements. Id. at 479. However, in New York v. Quarles, 467 U.S. 649 (1984), the United States Supreme Court created an exception to the general Miranda rule, recognizing that the "need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 656.

In Quarles, the police were alerted that the defendant was carrying a gun and had entered a supermarket. The officers located him at the supermarket and, while frisking him, discovered that the defendant wore an empty shoulder holster.

After handcuffing the defendant, and without giving him <u>Miranda</u> warnings, an officer asked him where the gun was, and the defendant responded, "the gun is over there."  The Court found the circumstances presented a threat to public safety and that the officers were not required to issue <u>Miranda</u> warnings prior to inquiring about the gun.  The Court stated:

> The police . . . were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded . . . [s]o long as the gun was concealed somewhere . . . with its actual whereabouts unknown, it obviously posed . . . danger to the public safety . . . . We decline to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the <u>Miranda</u> warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

<u>Quarles</u>, 467 U.S. at 657.

The "public safety" exception to <u>Miranda</u>'s dictates was applied in this Court's decision in <u>Shelton v. Commonwealth</u>, 34 Va. App. 109, 538 S.E.2d 333 (2000).  In <u>Shelton</u>, the police apprehended the defendant after being told that he robbed and carjacked a taxicab at gunpoint.  When the police apprehended the defendant in a residential neighborhood near a school, they handcuffed and frisked him.  The officers did not find a gun on

- 5 -

his person.  Before reading the defendant his Miranda rights, one of the officers asked him where the gun was.  We held the officers did not violate the defendant's Fifth Amendment rights because "[t]he circumstances posed the risk that a resident of the neighborhood or a school child 'might later come upon [the gun].'"  Id. at 118, 538 S.E.2d at 337 (quoting Quarles, 467 U.S. at 657).

Benton contends that the case at bar is distinguishable from Shelton because the defendant in Shelton was apprehended in a residential neighborhood, near a school, while he was stopped near a convenience store.  Thus, Benton argues the threat to the public was greater in Shelton, and therefore, unlike the case at bar, warranted the application of the public safety exception. We find this argument is without merit.  The police had been informed that a gun was discharged inside Benton's house.  When they frisked him, Benton did not have a gun in his possession, nor did the officers observe a gun inside Benton's vehicle.  The circumstances gave rise to an immediate need to determine the location of the gun to safeguard the public.  See Quarles, 467 U.S. at 657.  If Benton had been carrying the gun which was discharged at his residence, it reasonably follows that he discarded it at a location between his residence and where he was stopped.  As a result, an immediate public threat arose: the children at Benton's home, someone in his neighborhood, or any individual along the route between his home and the convenience

- 6 -

store may have found the gun.  The fact that Benton was not apprehended in a residential neighborhood or near a school, as in Shelton, is not dispositive.

Benton further contends the police were not motivated by the "public safety exception."  Rather, he contends the concern for the public safety was an afterthought, articulated to justify the questions.  The argument is without merit.  In Quarles, the Supreme Court noted "the availability of [the public safety] exception does not depend on the motivation of the individual officers involved."  Quarles, 467 U.S. at 655-56.

> In a kaleidoscopic situation such as the one confronting these officers, where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the exception which we recognize today should not be made to depend on post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer.  Undoubtedly most police officers . . . would act out of a host of different, instinctive, and largely unverifiable motives - their own safety, the safety of others, and perhaps as well the desire to obtain incriminating evidence from the suspect.

Id. at 656.  "Whatever the motivation . . . we do not believe that the doctrinal underpinnings of Miranda require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for public safety."  Id.

Benton also contends on appeal that the police did not have grounds to arrest him under Code § 19.2-81 and that his arrest and detention were unlawful. Benton failed to properly preserve this issue at trial, precluding review by this Court. See Rule 5A:18. His contention that the "ends of justice" exception to the rule cures the procedural default is without merit. "'The ends of justice exception is narrow and is to be used sparingly'" and only when an error at trial is "'clear, substantial and material.'" Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). Moreover, the record must "'affirmatively show[] that a miscarriage of justice has occurred not . . . that a miscarriage might have occurred.'" Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). The record does not support the application of the exception to the rule.

For the reasons stated, we affirm the decision of the trial court.

Affirmed.