COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and Kelsey
Argued at Richmond, Virginia


CLINTON ORLANDO STATEN
                                            MEMORANDUM OPINION[*] BY
v.       Record No. 2165-02-2               JUDGE ROBERT J. HUMPHREYS
                                            FEBRUARY 3, 2004
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                        Michael C. Allen, Judge

        Todd M. Ritter (Daniels & Morgan, on brief), for appellant.

        Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on brief), for appellee.


        Clinton Orlando Staten appeals his convictions, upon his pleas of guilty, for six counts of

robbery (in violation of Code § 18.2-58), one count of attempted robbery (in violation of Code

§ 18.2-26), one count of use of a firearm in the commission of robbery (in violation of Code

§ 18.2-53.1), and one count of use of a firearm in the commission of attempted robbery (in

violation of Code § 18.2-53.1).  Staten argues the trial court erred in refusing to allow him to

withdraw several of his guilty pleas.  Staten also contends that the trial court "effectively denied

his right to counsel" because the trial court "compelled" Staten to present the motion to withdraw

the pleas himself.  We find no merit in Staten's contentions and for the reasons that follow, we

affirm the judgment of the trial court.


--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover, as this opinion has no precedential value, we recite only those facts necessary to our holding.

It is well settled that "[o]n appeal, we review the evidence in the light most favorable to the party prevailing below, together with all reasonable inferences that may be drawn." Benton v. Commonwealth, 40 Va. App. 136, 139, 578 S.E.2d 74, 75 (2003). After his arrest on March 30, 2001, Staten was charged with six counts of robbery, six counts of use of a firearm in the commission of a robbery, one count of attempted robbery, one count of use of a firearm in the commission of attempted robbery,[1] and one count of grand larceny. Staten, who was sixteen years of age at the time of the commission of the robberies, was tried as an adult.

Before trial, Staten entered into a plea agreement with the Commonwealth. According to the terms of the plea agreement, Staten agreed to plead guilty to six counts of robbery, two counts of use of a firearm in the commission of robbery, and one count of attempted robbery. The Commonwealth agreed to *nolle prosequi* (not prosecute) the remaining charges and agreed that Staten should be sentenced to twenty years in the Department of Corrections.

On June 21, 2001, Staten was arraigned in circuit court, and pled guilty to the relevant charges as required by the terms of the plea agreement. Upon extensive questioning by the trial court, Staten agreed that he entered his pleas of guilty knowingly and voluntarily, that he understood his rights, and that he was "entirely and completely satisfied" with the services of his trial counsel, Jeffrey L. Everhart.

The Commonwealth then proffered that the evidence it would have presented at trial would have proved that Staten and two codefendants robbed several individuals at gunpoint on March 17, 2001 and March 30, 2001. The evidence was based, at least in part, upon Staten's confession that he, along with his two codefendants, committed the robberies. The trial court

---

[1] This charge was originally for use of a firearm in the commission of robbery, but was later amended to reflect a charge for use of a firearm in the commission of attempted robbery.

subsequently found Staten "guilty of each of the nine indictments," but for various reasons not related to this appeal, deferred its decision to accept the plea agreement.

On March 11, 2002, the parties appeared before the trial court once again. The Commonwealth informed the court at that time, that "there [was a] new" plea agreement. Staten's counsel agreed to the new written form of the plea agreement, and the trial court accepted it as drafted.

Because of several errors in the "new" plea agreement, the sentencing order, entered on May 20, 2002, also contained several errors. In particular, the sentencing order erroneously directed that Staten be sentenced to five years in prison on a charge that Staten had not been arraigned on, nor pled guilty to. The order also reflected that the Commonwealth had agreed to *nolle prosequi* a charge that Staten had pled guilty to, and been convicted of, on June 21, 2001. Each of these errors pertained to charges for offenses that occurred on March 30, 2001. None of the errors related to charges for the March 17, 2001 offenses.

On July 24, 2002, the trial court heard motions from the parties concerning these errors. The Commonwealth argued that the errors were merely "clerical error[s] to which [Staten] contributed because [Staten] read the [new plea] agreement." Thus, the Commonwealth contended that, pursuant to Code § 8.01-428, the trial court should vacate the portion of the sentencing order sentencing Staten on the charge he had not pled guilty to, vacate the subsequent order granting the Commonwealth's motion to *nolle prosequi* the charge Staten had pled guilty to, "accept[]" Staten's guilty plea on that charge, and fix a sentence on that charge.[2]

---

[2] Code § 8.01-428(B) provides that:

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as

However, Staten's counsel informed the trial court that Staten did not wish to have the errors corrected, but instead, had advised him that he wished to withdraw his guilty pleas and move forward with a trial. Staten's counsel proffered that Staten had informed him he had "certain defenses that he would like to bring to the attention of the Court and that he would prefer to contest all of the cases." Staten's counsel later advised the trial court that "[d]uring the break the family corrected me in something I said. In point of fact, what they tell me is that [Staten] doesn't want to withdraw all of his pleas of guilty, he wants to withdraw the pleas of guilty that deal with . . . offense dates of March 17, 2001."

In addition, Staten's counsel acknowledged that Staten's mother had filed a bar complaint against him and had "threatened to file a *habeas* petition against [him]." Staten's counsel advised that he was in a "quandary," that Staten and his mother had informed him they no longer wanted him to represent Staten, but that Staten had refused to release him from further obligation as his attorney. He stated, "[Staten] can speak for himself to a degree, I'm sure."

This colloquy followed:

> [Staten's Counsel]: Judge, I don't think he wants to testify. I think what he wants to do is ask Your Honor –
>
> [Trial Court]: He wants to serve as his own counsel.
>
> [Staten's Counsel]: Well, no, I think what he really wants to do is tell Your Honor why he thinks he should be allowed to withdraw his guilty pleas, and if Your Honor deems it appropriate to grant his [motion], he then wants to ask Your Honor to appoint counsel to represent him in those cases.
>
> [Trial Court]: Is that correct? Is that essentially what you want to do? You want the Court to allow you, based on these

the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

circumstances that we've all discussed, to withdraw your guilty pleas; is that correct?

[Staten]: Yes, sir.

[Trial Court]: To withdraw the ones identified just a moment ago by Mr. Everhart?

[Staten]: Yes, sir.

[Trial Court]: Okay. And then you would like the Court to appoint different counsel if I were to allow you to withdraw your pleas; is that correct?

[Staten]: Yes, sir.

[Trial Court]: . . . I will – that request of yours has been communicated to the Court just now and was communicated earlier. There's no other particular issue or motion you wish to make; is that correct? You just wish to ask me to allow you to withdraw your guilty pleas and to appoint different counsel if I were to allow that; is that correct?

[Staten]: Yes, sir.

[Trial Court]: Okay, I've got that, Mr. Staten. I don't think we need anything further; you can have your seat.

The trial court then denied Staten's motion, finding that "[they were there] because of an inadvert[e]nt clerical error that is correct[a]ble under [Code §] 8.01-428(B)."

On August 6, 2002, the court ordered that the sentencing order be vacated, as it pertained to the five-year sentence related to the charge Staten had not plead guilty to. The court further ordered that the sentencing order be amended to reflect that Staten pled guilty to Case Number CR01F1100-02, and amended to reflect that he be sentenced to five years in prison on that charge. Significantly, the trial court's order explicitly stated that "[a]ll other aspects of the Court[']s sentencing order of May 20, 2002 remain in full force and effect."

Following that hearing, Staten's counsel filed a motion to withdraw.[3]  On August 24, 2002, Staten filed, *pro se*, a written "motion to withdraw guilty pleas and to have counsel appointed to represent defendant on motion."  Staten alleged in the motion that he should be allowed to withdraw his guilty pleas because his counsel had pressured him into pleading guilty, because he signed the plea agreement under duress, and because his counsel had information prior to trial that Staten could not have committed the offenses that occurred on March 17, 2001, because he was in the custody of the Richmond Juvenile Detention Center at that time.  No ruling on this motion appears in the record.

Staten raises no issue on appeal concerning the validity of the trial court's actions in correcting the clerical errors.  He argues only that the court erred because it denied his motion to withdraw his guilty pleas without allowing him a "fair opportunity to be heard in support of his motion," and because he was "effectively denied his right to counsel" in making the motion.

Pursuant to Code § 19.2-296:

> A motion to withdraw a plea of guilty or *nolo contendere* may be made *only before* sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court *within twenty-one days after entry of a final order* may set aside the judgment of conviction and permit the defendant to withdraw his plea.

(Emphases added).  "Whether a defendant should be permitted to withdraw a guilty plea rests within the sound discretion of the trial court to be determined based on the facts and circumstances of each case."  Hall v. Commonwealth, 30 Va. App. 74, 79, 515 S.E.2d 343, 346 (1999).  "By definition, when the trial court makes an error of law, an abuse of discretion occurs."  Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000).

---

[3] On August 26, 2002, the trial court granted Staten's counsel's motion to withdraw and appointed new counsel for Staten.

During the hearing pertaining to the sentencing order errors, Staten's counsel advised the trial court that Staten wished only to withdraw guilty pleas that related to the March 17, 2001 offenses. Staten affirmed this statement when he agreed to the trial court's inquiry, "To withdraw the ones identified just a moment ago by Mr. Everhart?" On this record, there can be no question that the trial court imposed sentence and/or imposed suspension of sentence for all charges related to the March 17, 2001 offenses on May 20, 2002 - well before Staten sought to withdraw those particular guilty pleas. Thus, pursuant to Code § 19.2-296, the trial court lacked any authority to consider Staten's motion to withdraw his guilty pleas and, therefore, did not err in refusing to do so.[4]

Moreover, neither Staten, nor his trial counsel, argued that his July 24, 2002 motion to withdraw fell within the twenty-one-day period set forth in the statute. See Code § 19.2-296. Nor did they argue that Staten should have been allowed to withdraw his guilty pleas due to any alleged "manifest injustice." Instead, Staten agreed that his reason for requesting to withdraw the pleas was "based on [the] circumstances" "discussed" during the hearing, specifically, the clerical errors appearing in the plea agreement and the corresponding sentencing order.

Accordingly, despite Staten's newly-coined argument on appeal – that the twenty-one-day period did not begin to run until the trial court entered the August 6, 2002 order

---

[4] The fact that Staten's August 24, 2002 motion appears to be a motion to withdraw *all* of his guilty pleas, including the plea for the March 30, 2001 offense of using a firearm in the commission of attempted robbery (which Staten was arguably not sentenced for until August 6, 2002), is of no moment in our consideration of his claims on appeal. As stated above, the record reflects no ruling on Staten's motion. Without such a ruling, we have no basis upon which to consider Staten's claim in this regard. See Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) ("The burden is with appellant to submit to the appellate court a record that enables the court to determine whether there has been an abuse of trial court discretion."). This is true, even were we to consider the fact that Staten's counsel had filed a motion to withdraw and that Staten filed this motion *pro se*. See Church v. Commonwealth, 230 Va. 208, 213, 335 S.E.2d 823, 826 (1985) ("A defendant who represents himself is no less bound by the rules of procedure and substantive law than a defendant represented by counsel.").

correcting the clerical errors – it is clear that we are barred from considering Staten's contentions because he failed to raise them below.  See Rule 5A:18.  Indeed, because Rule 5A:18 is intended to afford the trial court an opportunity to consider the appropriate issues intelligently and take corrective action, if necessary, "to avoid unnecessary appeals," Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) (*en banc*), this Court will not hear arguments that were never presented to the trial court.  Michaels v. Commonwealth, 32 Va. App. 601, 607, 529 S.E.2d 822, 825 (2000); see also Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (noting that defendant could not rely upon an argument on appeal that was not raised at trial, even when the argument related to an issue properly raised).

For this same reason, we decline to consider Staten's contention that he was effectively denied his right to counsel.  See Rule 5A:18; see also Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("Rule 5A:18 applies to bar even constitutional claims.").  The record reflects that neither Staten, nor his trial counsel, argued below that he was "effectively" denied his right to counsel because he was "compelled" to present his own motion to withdraw his guilty pleas.  Moreover, although Staten includes, in a parenthetical to his Question Presented, a sentence stating "Denial of counsel not specifically objected to, but should be considered to achieve the ends of justice and due process for the defendant," Staten failed to argue this issue as a part of his "Law, Argument, and Authority" in his brief on appeal or in oral argument.

"[T]he ends of justice exception is narrow and is to be used sparingly."  Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989).  "In order to avail oneself of the [ends of justice] exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred."  Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).  "We will not consider, *sua sponte*, a 'miscarriage of

justice' argument under Rule 5A:18." See Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

We have consistently recognized that Rule 5A:20(e) requires an appellant's brief to include, among other things, the "principles of law, the argument, and the authorities relating to each question presented." See Rule 5A:20(e). Thus, statements appearing in a brief on appeal that are unsupported by "argument, authority or citations to the record" are insufficient to merit appellate consideration. Thomas v. Commonwealth, 38 Va. App. 319, 321 n.1, 563 S.E.2d 406, 407 n.1 (2002); Dickerson v. Commonwealth, 36 Va. App. 8, 15, 548 S.E.2d 230, 234 (2001); Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001); Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). In light of these principles, we do not consider Staten's single, unexplained and un-argued reference to the ends of justice exception, and we thus hold that Rule 5A:18 precludes us from considering Staten's claim.

Accordingly, and because we find that the trial court lacked any authority to consider Staten's untimely motion to withdraw his guilty pleas, we affirm the judgment of the trial court.

Affirmed.