COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Fulton and Ortiz
Argued at Richmond, Virginia

CHRISHAWN HICKMAN, SOMETIMES KNOWN AS
  CHRISHAWN DONNELL HICKMAN
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0298-23-2                CHIEF JUDGE MARLA GRAFF DECKER
                                                         MAY 21, 2024
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                              Richard B. Campbell, Judge[1]

            Charles R. Samuels for appellant.

            Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        Chrishawn Donnell Hickman appeals his convictions for first-degree murder and use of a

firearm in the commission of murder in violation of Code §§ 18.2-32 and -53.1.  He alleges the trial

court erred by denying his motion to suppress evidence.  He argues that law enforcement violated

his Fourth Amendment rights when they stopped his car, seized firearms found inside, and retained

the car and the firearms after letting him go.  We hold that the trial court did not err, and we affirm

the judgment.

---

        * This opinion is not designated for publication.  See Code § 17.1-413(A).

        [1] Judge Campbell presided at the appellant's jury trial and sentencing.  Judge Phillip L.
Hairston ruled on the pretrial motion to suppress evidence.

BACKGROUND[2]

At about 1:45 a.m. on April 23, 2020, City-of-Richmond police officers were parked side-by-side in two patrol cars when they heard twenty to thirty gunshots. Based on the rate of gunfire, they concluded that more than one firearm was being discharged. The officers quickly drove east on P Street, "toward the sound" of the gunshots, looking for possible suspects, victims, or "really anything related." As they did so, the officers saw a white Hyundai sedan turn onto P Street in front of them, coming from an alley between North 20th and 21st Streets. The car did not use a turn signal, and neither its headlights nor any other lights were illuminated. Due to the traffic infractions and the car's "close proximity" to a possible shooting, they pulled the car over, estimating the stop occurred less than a minute after they heard the gunshots.

Officer Dylan Coleman approached the driver's door, and Officer Edward Curran approached the passenger side. Hickman sat in the driver's seat, and three other men were in the car with him.

Curran saw a firearm in the floorboard area below the driver's seat. He signaled to the other officers about the gun, and they directed Hickman to get out of the car. Hickman was nervous, pale, breathing heavily, and sweating despite the cold outdoor temperature. The other three men were also removed from the car. "[A]s [the officers] were detaining" the group, Officer Coleman heard

---

[2] "On appeal, we view the record in the light most favorable to the Commonwealth because it was the prevailing party below." *Delp v. Commonwealth*, 72 Va. App. 227, 230 (2020). At the hearing on the motion to suppress evidence, the parties stipulated to the facts presented in their written submissions, and the judge decided the motion based on those stipulated facts. In reviewing the propriety of that ruling on appeal, however, this Court considers not only the facts before the circuit court at the suppression hearing but also the evidence admitted at trial. *See Hill v. Commonwealth*, 297 Va. 804, 808-09 (2019); *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020).

"radio traffic" that an unconscious, bleeding victim had been found at an intersection about three blocks away from the scene of the stop, in the direction from which the Hyundai had come.[3]

After everyone had been removed from the car, Officer Charles Arendall took the firearm from the front driver's floorboard. He noticed that the barrel was hot to the touch and the gun was empty of ammunition. Officer Coleman then shined his flashlight into the backseat area. The handle of a second firearm was protruding from the rear pocket of the front passenger seat. When the officer retrieved the second weapon, it too was hot to the touch. Coleman further noticed that the firearm had "malfunction[ed]" and was "jammed" due to "a double-feed" of bullets.

Later, while still at the scene, Hickman denied knowing the firearms were in the car, claiming that if he had known they were there, he would not have stopped for the police. He admitted hearing many nearby gunshots before the stop and said he was trying to leave the area quickly. The police, aware the gunshot victim had died, released the occupants of the vehicle, including Hickman, but kept the car and the firearms. The car was towed to a secure lot. Two days later, they executed a search warrant for the vehicle and found ski masks and a third firearm.

Hickman was indicted for first-degree murder and use of a firearm in the commission of murder. He filed a motion to suppress evidence, alleging that law enforcement violated his Fourth Amendment rights. He acknowledged that the officers "initially complied with the mandates" of a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). He further agreed that the police were entitled to conduct a "limited search" of the passenger compartment for weapons after seeing the firearm at his feet. He suggested, however, that the police exceeded their authority by retaining the car and the

---

[3] The record does not make clear how early in the encounter the officers learned about the unconscious victim found nearby. However, viewed under the proper standard, it indicates that they heard this information over the police radio no later than when they removed the occupants from the car, before they seized anything from it. In light of the Rule 5A:18 waiver related to the stop, *see infra* Part I, the lack of clarity regarding whether the officers learned about the victim before removing the occupants from the car is not significant here.

two guns "after [he] was questioned and released."[4]  Hickman contended that law enforcement should have obtained a search warrant for the items while he was being detained.  After a hearing, the trial court denied the motion to suppress, ruling that the officers had probable cause for the seizures of the car and the guns and that they acted reasonably under the totality of the circumstances.

At trial, the Commonwealth introduced evidence seized during the stop, as well as evidence later found in the car pursuant to the search warrant.  That evidence included all of the firearms, the ski masks, and the results of the forensic analyses of those items.[5]  The jury found Hickman guilty of first-degree murder and use of a firearm in the commission of murder.  He was sentenced to forty-three years of incarceration with ten years suspended.

ANALYSIS

Hickman contends for the first time on appeal that both the stop of the car and the removal of the two firearms from it at the scene violated his rights under the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures.  He also argues, as he did in the trial court, that the retention of the car and the firearms following his release from custody was unreasonable and violated the Fourth Amendment.

"In challenging the trial court's denial of his motion to suppress [evidence]," the appellant "'bears the burden of establishing that reversible error occurred.'"  *Saal v. Commonwealth*, 72 Va. App. 413, 421 (2020) (quoting *Mason v. Commonwealth*, 291 Va. 362,

---

[4] Trial counsel also acknowledged that the police had probable cause for a "concealed weapon offense" with regard to the second gun, the one found in the seat pocket.  He admitted, as a result, that his argument that the second gun should have been returned when Hickman was released was a "somewhat more difficult" one.

[5] The Commonwealth's evidence proved that the bullet that entered the victim's right upper back and lodged in the paraspinal soft tissue was fired from the handgun seized from the driver's floorboard.

367 (2016)).  When considering whether to affirm the denial of a motion to suppress, the "appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial."  *Commonwealth v. White*, 293 Va. 411, 414 (2017).  This Court is "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence."  *Jones v. Commonwealth*, 279 Va. 665, 670 (2010) (quoting *Whitehead v. Commonwealth*, 278 Va. 300, 306 (2009)).  In addition, the Court "give[s] due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  *Reittinger v. Commonwealth*, 260 Va. 232, 236 (2000) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).  Overarching "determinations of reasonable suspicion and probable cause [are] reviewed *de novo*."  *Freeman v. Commonwealth*, 65 Va. App. 407, 415 (2015) (quoting *Ornelas*, 517 U.S. at 699).  In reaching these legal conclusions, "[w]hether the Fourth Amendment has been violated is a question to be determined from all the circumstances," and "[r]eview of the existence of probable cause or reasonable suspicion involves application of an objective rather than a subjective standard."  *McCain v. Commonwealth*, 275 Va. 546, 552 (2008).  It is in this context that the Court examines the instant challenges.

## I.  Traffic Stop

Hickman argues on appeal that the officers stopped his vehicle unlawfully, tainting the seizures of the car, the firearms, and other incriminating evidence and rendering it inadmissible at trial.  He cites Code § 46.2-1030, which provides that in certain circumstances, operating a motor vehicle without headlights is a traffic infraction.  *See* Code § 46.2-1030(A), (F).  Through an amendment to the code section that took effect after the traffic stop in this case, the statute sets out additional circumstances in which evidence obtained after stopping a car for not using its headlights is inadmissible in court.  *See* Code § 46.2-1030(F); 2020 Va. Acts Spec. Sess. I chs. 45, 51

(effective Mar. 1, 2021).  As Hickman acknowledges, however, he failed to preserve this argument for appeal because his trial counsel did not make the argument in the court below.[6]

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials."  *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015); *see Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).

Although Hickman made a Fourth Amendment challenge in the trial court, he did not contest the stop or the initial seizure of the weapons.  He argued only that law enforcement lacked probable cause to retain the car and the weapons once he and his companions were released at the scene.[7]  As a result, the arguments of appellate counsel now challenging the stop of the car and temporary seizure of the firearms are waived under Rule 5A:18.

---

[6] Hickman also acknowledges that his failure to use a turn signal was another justification the Commonwealth provided for the stop, again a rationale not challenged by trial counsel.  *See* Code § 46.2-848; Rule 5A:18.  Further, he does not provide any argument or authority supporting his vague suggestion that the turn-signal violation was constitutionally insufficient to permit a vehicle stop.  *See* Rule 5A:20(e).  *See generally Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that probable cause to believe a person "has committed even a very minor criminal offense," such as a seatbelt violation, in an officer's presence permits a valid arrest under the Fourth Amendment).

[7] At the suppression hearing, Hickman's trial counsel "conceded" that the stop of the car and removal of the weapon from the floorboard for the duration of the stop was lawful.  Trial counsel specifically articulated this concession only regarding the lawfulness of the seizure of the gun from the floorboard.  He acknowledged, however, that his argument regarding the seizure of the firearm in the seat pocket was "somewhat more difficult" than the one concerning the gun at Hickman's feet.  Counsel explained this was so because the police had probable cause for a "concealed weapon offense" with regard to the firearm in the seat pocket.  A necessary component of trial counsel's assertion regarding this greater difficulty is the representation that this second weapon was also lawfully seized.  *See generally Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc) (observing that a concession of law can qualify as a

Rule 5A:18 "contains an exception that allows us to reach issues on appeal that were not raised below 'for good cause shown or to enable th[is] Court . . . to attain the ends of justice.'" *Merritt v. Commonwealth*, 69 Va. App. 452, 459-60 (2018) (quoting Rule 5A:18). Nevertheless, the ends-of-justice "'exception is narrow and is to be used sparingly,' and [it] applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant."[8] *Id.* at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).

Hickman acknowledges that he did not preserve his argument about Code § 46.2-1030 below but asks this Court to invoke the ends-of-justice exception. "In order to avail oneself of the exception," though, an appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt*, 66 Va. App. at 210 (quoting *Redman*, 25 Va. App. at 221). Hickman fails to meet that burden here. *See Benton v. Commonwealth*, 40 Va. App. 136, 143-44 (2003). At most, he suggests that no evidence or act of judicial notice established "a time of day" or "weather conditions" necessary to prove that the middle-of-the-night traffic stop was valid under Code § 46.2-1030(A).[9] *See* Code

---

waiver for purposes of Rule 5A:18), *cited with approval in Butcher v. Commonwealth*, 298 Va. 392, 395 (2020) (plurality opinion).

[8] The "perceived futility of an objection does not excuse a defendant's procedural default at trial." *Commonwealth v. Jerman*, 263 Va. 88, 94 (2002) (providing that this "conclusion [was] not altered by" a subsequent change in the law).

[9] This assertion about subsection (A), in part, ignores trial counsel's stipulation for purposes of the suppression hearing, as well as testimony at trial, that the stop occurred about 1:45 a.m. *See White*, 293 Va. at 414. Hickman also questions whether language in subsection (A) "conflict[s]" or "mesh[es]" with the language in subsection (F). He sets out basic principles of statutory construction but makes no attempt to analyze how they apply in this case. In light of this lack of analysis, we do not evaluate the ends-of-justice exception with regard to this undeveloped argument. *See* Rule 5A:20(e); *Davis v. Commonwealth*, 70 Va. App. 722, 738 (2019).

§ 46.2-1030(A) (proscribing operating a vehicle without headlights "from sunset to sunrise" or in other specified conditions involving reduced visibility). In other words, he asserts only an *absence* of evidence to prove one of those conditions. A mere absence of evidence is insufficient to establish a miscarriage of justice as contemplated for application of the exception. *See Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 75 (2015).

We therefore hold that the ends-of-justice exception does not apply to Hickman's waived arguments concerning the traffic stop and the initial seizure of the two firearms, and we do not consider these arguments on appeal.

## II. Retention of the Car and Firearms

Hickman argues that the police lacked a lawful basis for retaining the car and the two firearms after releasing him and his companions following the traffic stop.[10] We disagree.

To address Hickman's claim, we begin by outlining the constitutional framework applicable to searches and seizures of motor vehicles. "The Fourth Amendment prohibits only 'unreasonable searches and seizures,' not reasonable ones." *King v. Commonwealth*, 49 Va. App. 717, 723 (2007) (citation omitted) (quoting *Anderson v. Commonwealth*, 20 Va. App. 361, 363 (1995)). Although activity implicating the Fourth Amendment generally requires "a warrant issued by an independent judicial officer," one of the specifically established and well-delineated exceptions to this requirement is the "automobile exception." *California v. Carney*, 471 U.S. 386, 390 (1985); *see California v. Acevedo*, 500 U.S. 565, 580 (1991). Under this exception, "a police officer may, before making an arrest and without obtaining a search warrant, search a vehicle involved in a traffic stop so long as the officer has probable cause to do

---

[10] We assume without deciding that Hickman's brief presents adequate argument and authority on this issue to warrant resolution on appeal. *See* Rule 5A:20(e); *Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015). At most, however, Hickman challenges the fact of the retention, *not* its duration, and we limit our analysis accordingly.

- 8 -

so." *Curley v. Commonwealth*, 295 Va. 616, 621 (2018). This is so, in part, because a vehicle is "readily movable." *Carney*, 471 U.S. at 390-91 (quoting *Chambers v. Maroney*, 399 U.S. 42, 51 (1970)).[11]

It is equally clear that if police have probable cause to believe that a lawfully stopped vehicle was used in the commission of a crime or contains evidence of a crime, they may seize the vehicle itself. *See Schaum v. Commonwealth*, 215 Va. 498, 501 (1975) (holding that police with probable cause to believe a seized car contained evidence of a burglary could search it "either at the place where it was stopped or shortly thereafter at the police station"); *McCary v. Commonwealth*, 228 Va. 219, 227-28, 230-31 (1984) (holding that probable cause justified an initial warrantless search and seizure of a vehicle under the automobile exception, as well as a subsequent search of it pursuant to a search warrant). Under the automobile exception to the warrant requirement, the law recognizes "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers*, 399 U.S. at 52.

So our analysis turns on whether the officers had probable cause in this case. "There is no formula for determining probable cause; it is a 'flexible, common-sense standard.'" *Keene v. Commonwealth*, 74 Va. App. 547, 555 (2022) (quoting *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003)). It "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)

---

[11] Despite the fact that this case involved a traffic stop, Hickman argues that the vehicle was not readily "mobile" because law enforcement stopped it and detained its occupants in handcuffs. As the United States Supreme Court has made clear, however, the "'justification to conduct such a warrantless search does not vanish once the car has been immobilized.' A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband[ without additional proof] of exigent circumstances . . . ." *United States v. Johns*, 469 U.S. 478, 484 (1985) (citation omitted) (quoting *Michigan v. Thomas*, 458 U.S. 259, 261 (1982)); *see also United States v. Kelly*, 592 F.3d 586, 590-91 (4th Cir. 2010) (discussing the irrelevance of handcuffing in light of the exception's bright-line rule).

(quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). Probable cause to search a particular place "exists when 'there is a fair probability that contraband or evidence of a crime will be found in [that] place.'" *Jones v. Commonwealth*, 277 Va. 171, 178 (2009) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). And "[f]or an object [found during a lawful search] to be 'incriminating' for constitutional purposes, the seizing authority need only have . . . probable cause to believe that the object is evidence of a crime." *United States v. Ross*, 527 F.2d 984, 985 (4th Cir. 1975). "Unlike a factfinder at trial, 'reasonable [police] officers need not "resolve every doubt . . . before probable cause is established."'" *Joyce v. Commonwealth*, 56 Va. App. 646, 660 (2010) (quoting *Slayton*, 41 Va. App. at 107). Finally, in making a determination whether probable cause exists, courts look to the totality of the circumstances. *Gates*, 462 U.S. at 238.

In the instant case, the police had probable cause to believe that the Hyundai contained evidence of the fatal shooting that had just occurred nearby and that the two recently fired handguns they initially seized from it were part of that evidence. The officers conducting the stop had themselves heard the rapid-fire gunshots and concluded that those shots resulted from the discharge of more than one firearm. Less than a minute later, they conducted a lawful traffic stop of a car fleeing the area without using its headlights. Then the officers learned that an unconscious gunshot victim had been found about three blocks away, at a location in the direction from which the Hyundai had come. At the time of the stop, the car's driver, Hickman, was nervous, pale, breathing heavily, and sweating despite the cold outdoor temperature. During the stop, Officer Curran saw a firearm in plain view on the floorboard on the driver's side, where Hickman had

been seated.[12]  Officer Arendall lawfully seized that firearm and discovered it was both empty of ammunition and hot to the touch, indicating recent firing.[13]  *Cf. Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993) (holding that where an officer justifiably touches an object and the object's "contour or mass makes its identity [as contraband] immediately apparent," he is authorized to seize it without a warrant).  A second firearm was found in a pocket behind the front passenger seat.  That gun also was hot to the touch, and it was jammed in a fashion consistent with rapid firing of the type the officers had heard.  During subsequent questioning, Hickman admitted that he was near where the gunshots were fired and was, in fact, fleeing that location.

These facts were sufficient to establish a probability or substantial chance that the two firearms had been used in the very recent nearby shooting.  This probability gave the firearms independent evidentiary value and permitted the police to retain them to preserve that value.  *See United States v. Pratt*, 915 F.3d 266, 273 (4th Cir. 2019) (recognizing that the government might retain an item with "independent evidentiary value, like a murder weapon," indefinitely), *quoted with approval in United States v. Smith*, 967 F.3d 198, 209 (2d Cir. 2020) (distinguishing a digital tablet because it had no independent evidentiary value and a warrant was required to search its contents), *and cited with approval in Harvey v. Commonwealth*, 76 Va. App. 436, 469 (2023) (holding that "[p]ersonal property without independent evidentiary value may not be kept indefinitely").  Similarly, these facts provided probable cause to believe that the vehicle, too, could contain additional evidence of that very recent shooting.  As a result, the police were

---

[12] Before seizing the firearm, the officers lawfully removed the occupants from the vehicle.  *See, e.g.*, *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (holding that officers are permitted to remove all occupants from a car pending completion of a routine traffic stop (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997))).

[13] As noted, the appellant waived the right to challenge the lawfulness of the initial seizure of the firearms for purposes of appeal.  *See supra* Part I.

justified in towing the car, securing a warrant, and searching it two days later.[14] *See McCary*, 228 Va. at 227-28, 230-31.

Contrary to the appellant's suggestion, the fact that law enforcement chose to release Hickman and his companions that night rather than arrest them did not defeat the existence of probable cause to retain the car and the handguns. Whether probable cause exists to seize a car and various objects inside it is different from whether probable cause supports the arrest of a particular person in that car. *See* 2 Wayne R. LaFave, *Search and Seizure* § 3.1(b), at 13 (6th ed. 2020) ("[P]robable cause to search a particular place may exist without there also being probable cause to arrest a person who occupies that place."). Also, assuming the police did have probable cause to arrest Hickman that day, their decision not to do so did not defeat the existence of probable cause to retain the evidence of the likely getaway car and weapons used in the fatal shooting.[15] *See Hairston v. Commonwealth*, 67 Va. App. 552, 565-66 (2017).

The trial court therefore did not err by rejecting Hickman's claim that law enforcement violated the Fourth Amendment by retaining his car and the firearms seized from it until a warrant was obtained and the car was later searched pursuant to that warrant.

---

[14] Hickman suggests on appeal that the police conducted an unlawful "warrantless search" of the car. The officers, however, did not conduct a warrantless search. Their only action before obtaining a warrant was to initially seize the two firearms in a protective sweep during the stop and then seize the car itself. Hickman waived the right to contest the initial seizures of the weapons on appeal because he did not challenge the issue below. Police then obtained a search warrant and searched the car pursuant to that warrant. Hickman does not argue that the warrant was defective or the search under the warrant was unlawful. Accordingly, our inquiry is limited to whether the police violated his Fourth Amendment rights by retaining the car and the two firearms after they released him and before they executed the search warrant.

[15] Notably, the April 23, 2020 stop occurred six weeks after Virginia's governor issued an executive order declaring a state of emergency due to the COVID-19 pandemic and directing localities to implement mitigation strategies. *See* Gov. Ralph Northam, Exec. Order No. 51 (Va. Mar. 12, 2020); *see also Osman v. Commonwealth*, 76 Va. App. 613, 633-34 & n.4 (2023) (detailing orders issued by the Supreme Court of Virginia due to the pandemic starting March 16, 2020, and restricting nonemergency court proceedings for more than two years).

CONCLUSION

The trial court did not err in denying the motion to suppress evidence. Accordingly, we affirm the appellant's convictions. We remand the matter to the trial court for the sole purpose of correcting clerical errors in the conviction and sentencing orders.[16]

*Affirmed and remanded.*

---

[16] The conviction and sentencing orders erroneously cite Code § 19.2-53.1 rather than 18.2-53.1 as the statute proscribing use of a firearm in the commission of a felony. The trial record makes clear that the appellant was indicted, convicted, and sentenced for violating Code § 18.2-53.1. We remand to the trial court for the limited purpose of correcting the code section citations in these two orders. *See* Code § 8.01-428(B); *Holley v. Commonwealth*, 64 Va. App. 156, 167 & n.6 (2014) (en banc).